IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNIVERSAL TRUCKLOAD, INC. | § § | |
| vs. | § § | Civil Action No. 4:15-cv-01651 |
| DALTON LOGISTICS, INC., HESS CORPORATION, HELMERICH & PAYNE, INC., NABORS DRILLING USA, LP, FOUR SEASONS EQUIPMENT, INC., HALCON RESOURCES CORPORATION, APPLIED MACHINERY CORPORATION, AND GRANT PRIDECO, LP | § § § § § § § § § § § | |

**ORIGINAL ANSWER & COUNTERCLAIMS OF DALTON LOGISTICS, INC.**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant, Dalton Logistics, Inc., files this Original Answer & Counterclaims against Plaintiff Universal Truckload, Inc.'s ("Universal") original complaint.

## INTRODUCTION & BACKGROUND

Dalton Logistics, Inc. ("Dalton") is a small, family-owned logistics business founded by Richard "Dick" Meredith in 2004 in Humble, Texas. Meredith founded the company based on his hands-on experience in the oil and gas fields of northern Louisiana coupled with his background in running an interstate trucking company that specialized in moving heavy equipment and steel.

After successfully completing a service agreement for trucking services based in North Dakota with Hess Corporation in the spring of 2013, Meredith had all but

1

decided to pack up and bring Dalton back to Texas.  However, all that changed when Universal's Mark Limback contacted Meredith in April 2013 regarding an interest to purchase Dalton outright.

In April 2013, Dalton owed Universal $0, and was poised to continue its successful operation based in Texas.  After a May 2013 letter of intent, multiple drafts of asset purchase agreements, the exchange of financials, requests from Universal to generate additional Master Service Agreements (MSAs), and approximately sixteen months of correspondence, Universal failed to follow through with its promise to purchase Dalton, despite the fact that Dalton had complied with Universal's demands, and secured over a dozen new MSAs.

As a result, Dalton not only expended nearly all of its own resources, but also incurred approximately $2 million in service charges with Universal- an amount that Universal previously represented would be applied toward the purchase of Dalton, and now the amount sought by Universal in this lawsuit.  In addition, Universal reached out to several of Dalton's business affiliates (*see* above-named Defendants) and claimed Dalton had simply not "paid the bill" while failing to make any mention as to Universal's own hand in creating the $2 million debt in the first place.

## DEFENDANT'S ANSWER TO PARTIES (PARAGRAPHS 1— 9)

1. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 1.

2. Defendant admits the information contained in paragraph 3.

3. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 3.

4. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 4.

5. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 5.

6. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 6.

7. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 7.

8. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 8.

9. Defendant lacks sufficient knowledge or information to form a belief about the truth of paragraph 9.

## DEFENDANT'S ANSWER TO JURISDICTION (PARAGRAPHS 10 — 12)

10. Because the statements of Paragraph 10 contain legal conclusions, not allegations of fact directed to Defendant, no response from Defendant is necessary. To the extent that a response if deemed necessary, Defendant denies the allegations.

11. Because the statements of Paragraph 11 contain legal conclusions, not allegations of fact directed to Defendant, no response from Defendant is necessary. To the extent that a response if deemed necessary, Defendant denies the allegations.

12. Because the statements of Paragraph 12 contain legal conclusions, not allegations of fact directed to Defendant, no response from Defendant is necessary. To the extent that a response if deemed necessary, Defendant denies the allegations.

**DEFENDANT'S ANSWER TO ALLEGED FACTS (PARAGRAPHS 13 — 18)**

13. Defendant denies that Universal fully performed its obligations. Defendant is without information sufficient to form a belief as to the truth of the matter asserted in the remaining allegations of Paragraph 13 and, therefore, denies the remaining allegations of Paragraph 13.

14. Dalton admits it arranged for the transportation of shipments of freight upon the request of third party customers. Defendant lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations set forth in Paragraph 14, and therefore, denies the allegations as stated.

15. Dalton admits Universal transported freight. Defendant lacks sufficient knowledge or information to form a belief about the truth of the remaining allegations set forth in Paragraph 15, and therefore, denies the allegations as stated.

16. Prior to Universal's promise to purchase Dalton, subsequent Letters of Intent, Asset Purchase Agreements, and repeated assurances, Dalton always paid Universal for its services in a timely fashion, without objection from Universal. Dalton admits that Universal was to be made "whole" when Universal completed its purchase of Dalton as promised by Universal in the manner requested by Universal; that is, to deduct any amounts outstanding to Universal by Dalton from the purchase price of

Dalton. Dalton did not disclose Universal's promise to purchase Dalton to the other Defendants in this matter, as the terms of that purchase were to remain confidential.

17. Because the statements of Paragraph 17 contain legal conclusions, not allegations of fact directed to Defendant, no response from Defendant is necessary. To the extent that a response if deemed necessary, Defendant denies the allegations.

18. Defendant denies the allegations set forth in paragraph 18.

## DEFENDANT'S ANSWER
## TO CAUSES OF ACTION (PARAGRAPHS 19 — 29)

19. Defendant is not required to admit or deny Paragraph 19. To the extent that a response if deemed necessary, Defendant denies the allegations.

20. Defendant denies the allegations set forth in paragraph 20.

21. Defendant denies the allegations set forth in paragraph 21.

22. Defendant denies the allegations set forth in paragraph 22.

23. Defendant denies the allegations set forth in paragraph 23.

24. Defendant is not required to admit or deny Paragraph 24. To the extent that a response if deemed necessary, Defendant denies the allegations.

25. Defendant denies the allegations as set forth in paragraph 25. To the best of Defendant's knowledge, Dalton is the only Defendant who requested services from Universal.

26. Defendant admits it accepted the services it requested, but denies the remaining allegations as stated in Paragraph 26.

27. Defendant denies the allegations set forth in paragraph 27.

28. Defendant is not required to admit or deny Paragraph 28. To the extent that a response if deemed necessary, Defendant denies the allegations.

29. Defendant denies the allegations set forth in paragraph 29.

### DEFENDANT'S ANSWER TO CONDITIONS PRECEDENT (PARAGRAPH 30)

30. Defendant denies the allegations set forth in paragraph 30.

### DEFENDANT'S ANSWER TO VICARIOUS LIABILITY (PARAGRAPH 31)

31. Defendant denies the allegations set forth in paragraph 31.

### DEFENDANT'S ANSWER TO PRAYER (PARAGRAPH 32)

32. Defendant is not required to admit or deny Paragraph 32. To the extent that a response if deemed necessary, Defendant denies the allegations.

### DEFENDANT'S AFFIRMITIVE DEFENSES

33. Defendant is not liable to Plaintiff because of equitable estoppel. Universal made a false representation or concealed material facts, and did so with actual or constructive knowledge, with the intention that Dalton rely on such representation/concealment of materials facts, when Dalton had no knowledge or means of obtaining such knowledge, and who detrimentally relied on the representations/concealment of material facts.

34. Defendant is not liable to Plaintiff because Plaintiff failed to mitigate its damages.  Throughout the accumulation of Plaintiff's alleged "debt"/damages,

Plaintiff did nothing to mitigate its damages, and instead allowed the "debt"/damages to accrue while at the same time encouraging Defendant to aid in such accrual.

35. Defendant is not liable to Plaintiff because of laches. Despite its full knowledge of its alleged "debt"/damages, Plaintiff waited an unreasonable amount of time to assert its claim to said "debt"/damages. Such delay, in addition to other representations and assurances made by Plaintiff, caused Defendant to change its position to its detriment. Specifically, Defendant had an established history of paying similar "debts" to Plaintiff in a timely manner (upon completion of its services). However, once Plaintiff promised to purchase Defendant, Plaintiff instructed and encouraged Defendant to keep the alleged "debts" for itself to be applied as a credit for Plaintiff at the time of the purchase of Defendant. Had Defendant known that Plaintiff would demand payment for the "debt," Defendant would have paid in a timely fashion as it had in the past. Yet, Plaintiff's unreasonable delay caused Defendant to change its normal position, to its detriment.

36. Defendant is not liable to Plaintiff because of mistake. Specifically, it was Defendant's belief that the amount of damages now sought by Plaintiff was to be applied as a credit for Plaintiff at the time of the purchase of Defendant. Defendant's belief was that it was to keep the payments for services for use in operation of its business.

37. Defendant is not liable to Plaintiff because of novation. Specifically, while Plaintiff and Defendant had an arrangement whereby Defendant would tender monies

7

to Plaintiff for services, that arrangement was modified with Plaintiff's promise and course of action to purchase Defendant.

38. Defendant is not liable to Plaintiff because of ratification. Throughout the time period where Plaintiff's alleged damages accrued, Plaintiff regularly assured Defendant that it was to keep the monies Plaintiff now calls "debt"/damages.

39. Defendant is not liable to Plaintiff because of the Statute of Frauds.

40. In the event of a recovery on behalf of Plaintiff of any kind, Defendant pleads and is entitled to an offset for the damage caused to Defendant, as well as the self-inflicted damages of Plaintiff.

## DEFENDANT'S COUNTERCLAIMS

41. Without waiving the above-numbered admissions, denials, and affirmative defenses, and pleading in the alternative if necessary, Defendant further makes a claim for the following counterclaims against Plaintiff, Universal.

**Promissory Estoppel**

42. In May 2013, Universal promised Dalton that it intended to purchase Dalton. Over the next sixteen months, Universal repeatedly assured Dalton of its intent to purchase, and allowed Dalton to expend its resources and incur debt with Universal that was to be applied at the time of closing.

43. Based on Universal's promise, and repeated assurances, Dalton reasonably and substantially relied on Universal's promise and assurances to its detriment. Specifically, Dalton exhausted its own resources securing Master Service Agreements

(MSAs) with third parties in need of trucking services, while at the same time, incurring approximately $2 million in accounts payable to Universal (the amount Universal is suing for) that was to be accounted for at the time of closing.

44. Dalton's reliance was foreseeable by Universal because Dalton and Universal stayed in constant communication from the first Letter of Intent in May 2013, through the end of 2014, during which time Universal encouraged Dalton to secure additional MSAs to be serviced by Universal's fleet of trucks- an endeavor that caused Dalton to not only expend its own resources (approximately $4 million in cash), but to also incur approximately $2 million for trucking services- an amount that Universal informed Dalton would be accounted for at closing.

45. As a result of Universal's failure to follow through with its promise to acquire Dalton, Dalton is entitled to the damages required to restore it to its former position- prior to Universal's first Letter of Intent in May 2013.

**Fraudulent Inducement**

46. Pleading in the alternative if necessary, in May 2013, Universal represented to Dalton that it intended to acquire Dalton by purchase.

47. Universal's representation was material in that it induced Dalton to maintain a presence in the North Dakota region, establish additional MSAs, expend its resources, and incur service charges with Universal.

48. Universal's representation was false, as Universal never followed through with its representation to Dalton. Universal made the representation to Dalton knowing

9

that it never intended to follow through with the acquisition; or, made the representation recklessly and without regard to the truth of the representation.

49. Universal made the representation with the intent that Dalton act on it, and Dalton did. In fact, Dalton made Universal aware of its reliance by maintaining a constant line of communication between the companies regarding the acquisition, exchanging financials, maintaining a presence in the North Dakota region and increasing the number of MSAs- all at the request of Universal.

50. Due to Universal's false representation and repeated assurances (whether intentional or reckless), Dalton suffered actual damages by expending nearly all of its own resources in excess of approximately $4 million in cash and incurring approximately $2 million in debt with Universal; after which, Universal reached out to several of Dalton's business affiliates (*see* above-named Defendants) and claimed Dalton had simply not "paid the bill" while failing to make any mention as to Universal's own hand in creating the $2 million debt in the first place.

## PRAYER

51. For these reasons, Defendant asks the Court to enter judgment that Plaintiff take nothing, dismiss Plaintiff's suit with prejudice, assess costs against Plaintiff, and award Defendant all other relief the Court deems appropriate including, but not limited to actual damages, exemplary damages, pre-judgment and post-judgment interest at the maximum rate allowed by law, costs of court, and reasonable and necessary attorney's fees.

        Respectfully submitted,

        GIBSON HILL, P.C.

        By:  */s/ Brett Hill*
        Brett Hill
        Texas Bar No. 24072776
        Southern District Bar. No. 2130125
        The Kirby Mansion
        2000 Smith Street
        Houston, Texas 77002
        brett@taglawpc.com
        Tel: 713.659.4000
        Fax: 713.752.2002

        *Attorneys for Dalton Logistics, Inc.*

## Certificate of Service

This is to certify that on July 20, 2015, I electronically filed the foregoing document with the Clerk of Court.  Pursuant to FED. R. CIV. P. 5(b) and Southern District of Texas Local Rule 5.5, I certify that a copy of this instrument was served on July 20, 2015 via the Court's DC/ECF system:

Ryan T. Hand
*Lorance Thompson, PC*
2900 N. Loop W., Ste. 500
Houston, Texas 77092
Tel: 713.868.5560
Fax: 713.864.4671
rth@lorancethompson.com
*Attorneys for Universal Truckload, Inc.*

Andrew P. McCormick
*McCormick, Lanza, & McNeel, LLP*
4950 Bissonnet Street
Bellaire, Texas 77401
(713) 523-0400
713-523-0408 (fax)
amccormick@mlm-lawfirm.com
*Attorneys for Four Seasons Equipment, Inc.*

Elizabeth Ellen Klingensmith
*Haynes & Boone LLP*
1221 McKinney St, Ste, 2100
Houston, TX 77010-2007
713-547-2592
713-236-5495 (fax)
liz.klingensmith@haynesboone.com
*Attorneys for Hess Corporation*

Eugene Montgomery Nettles
*Porter & Hedges LLP*
1000 Main St., 36th Flr.
Houston, TX 77002-6336
713-226-6609
713-226-6209 (fax)
emnettles@porterhedges.com
*Attorneys for Halcon Resources Corporation*